IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| **CHARLES J. MARTIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 5:05-0947** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on Plaintiff's Motions for Remand (Doc. No. 11.) and to Submit Additional Evidence (Doc. No. 17.) and Defendant's Motions for Judgment on the Pleadings (Doc. No. 14.) and to File Out of Time his Response to Plaintiff's Motion to Submit Additional Evidence. (Doc. No. 17.) Both parties have consented in writing to a decision by the United States Magistrate Judge.

In his Motion to Submit Additional Evidence, Plaintiff points out that he was granted benefits in a subsequent application as of May 10, 2005, the day after the date of the ALJ's decision in the instant case. (Doc. No. 16.) He attaches to the Motion a copy of the Social Security Administration's ("SSA") decision, dated June 10, 2006, finding Plaintiff disabled as of May 10, 2005. Plaintiff requests that the District Court remand this case based upon this evidence. Having examined the record in this case, the Court hereby **GRANTS** Claimant's Motions for Remand and

to Submit Additional Evidence, **VACATES** the decision of the Commissioner, and **REMANDS** this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings to determine whether the onset of Claimant's disability, as found in subsequent proceedings to have occurred the day after the date of the ALJ's decision under review in this case, actually occurred within the time frame of this case, i.e., between October 5, 2002, and May 9, 2005.[1]

The Plaintiff, Charles J. Martin (hereinafter referred to as "Claimant"), filed an application for DIB and SSI on October 30, 2003 (protective filing date), alleging disability as of October 5, 2002, due to paranoid schizophrenia and a hand impairment. (Tr. at 76-77, 78-80, 103, 261-63.) The claims were denied initially and upon reconsideration. (Tr. at 45-47, 52-54, 264-67.) On June 7, 2004, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 55.) The hearing was held on March 8, 2005, before the Honorable Charles R. Boyer. (Tr. at 25-42.) By decision dated May 9, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 16-24.) The ALJ's decision became the final decision of the Commissioner on August 12, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 5-11.) Claimant filed the present action seeking judicial review of the administrative decision on November 29, 2005, pursuant to 42 U.S.C. § 405(g).[2]

---

[1] Sentence four of 42 U.S.C. § 405(g) provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing."

[2] Claimant states in his Complaint (Doc. No. 1.) that he is a resident of Clifton Forge, Virginia. Proper venue under 42 U.S.C. § 405(g) is "in the district court of the United States for the judicial district in which the [claimant] resides." 42 U.S.C. § 405(g). Pursuant to Rule 12(h)(1) of the Federal Rules of Civil Procedure, the defense of improper venue is waived where not raised. *See also*, *Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S.Ct. 1084, 1089, 4 L.Ed.2d 1254 (1960)("finding that a "defendant, properly served with process by a court having subject matter jurisdiction, waives

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall

---

venue by failing seasonably to assert it, or even simply by making default."). Absent extraordinary circumstances, improper venue should not be raised *sua sponte* after the Defendant has effectively waived the issue. *See Stjernholm v. Peterson*, 83 F.3d 347, 349 (10th Cir.), *cert. denied*, 519 U.S. 930, 117 S.Ct. 301, 136 L.Ed.2d 219 (1996); *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371 (2d Cir. 1966)("Since the right to attack venue is personal to the parties and waivable at will, a district judge should not, in the absence of extraordinary circumstances, impose his choice of forum upon the parties by deciding on his own motion that there was a lack of proper venue."). Defendant has not raised the defense of improper venue, and therefore, the Court finds that the defense has been effectively waived. Accordingly, the Court considers the merits of Claimant's appeal.

v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in

>which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>      (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>      (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 18.) Under the second inquiry, the ALJ found that Claimant suffered from "a depressive disorder, borderline intellectual functioning, obstructive emphysema and bronchitis, and a chronic deformity of three fingers of the left hand," which the ALJ regarded as severe impairments. (Id.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 21.) The ALJ then found that Claimant had a residual functional capacity for "simple, repetitive work at the medium exertional level that involved little stress and required minimal public contact." (Tr. at 22.) At step four, the ALJ found that Claimant was able to return to his past relevant work as a security guard patrolling property, as that occupation was

performed by him. (Tr. at 23.) On this basis, benefits were denied. (Tr. at 23-24.)

Claimant's Background

Claimant was born on October 29, 1952, and was 52 years old at the time of the administrative hearing. (Tr. at 17, 33-34, 78.) Claimant had a third grade education and received vocational training. (Tr. at 17, 32-33, 109.) In the past, Claimant worked as a window replacement helper, a lawn care worker, a security officer, an irrigation service technician, a service station tow truck driver, a night manager for an arcade, and a grounds crewman for a golf course. (Tr. at 17, 34, 123-30.)

Motion for Remand

Claimant filed his Motion for Remand on March 1, 2006 (Doc. No. 11.), and his Motion to Submit Additional Evidence on June 21, 2006. (Doc. No. 16.) Attached to his Motion to Submit Additional Evidence was a copy of the SSA's decision finding him disabled as of May 10, 2005. (Doc. No. 16, Exhibit A.) It is on this latter additional evidence that the Court finds Claimant's Motion for Remand meritorious. Remand is appropriate for the Commissioner to consider the evidence underlying the SSA's decision finding Claimant disabled as of May 10, 2005, the day after the unfavorable ALJ decision at issue in the instant case. Apparently, after receiving the Appeals Council's August 12, 2005, decision denying review of the May 9, 2005, denial of benefits, Claimant applied a second time for DIB benefits. The Court is unaware of whether Claimant's alleged onset date in this second application was October 5, 2002, the same date which was alleged in his first application.

In a decision dated June 10, 2006, the SSA found Claimant disabled as of May 10, 2005, the day after the date of ALJ Boyer's decision in the instant case finding Claimant not disabled. (Doc.

No. 16, Exhibit A.) The SSA's decision gives no indication of the reasoning behind the decision. Clearly, however, as the Appeals Council's denial of request for review of the instant claim was dated August 12, 2005, the Appeals Council did not have the June 10, 2006, decision when it accepted ALJ Boyer's May 9, 2005, decision.[4]

---

[4] The Court presumes that Claimant's second application for benefits was filed after the Appeals Council denied his request for review. *See* 20 C.F.R. § 404.900(a)(5) (2002). That being the case, the Social Security Administration's December 30, 1999, Emergency Message-99147, which the Court has cited in ruling on cases similar to this one, did not specifically apply in the instant case. Its effect, however, seems to have applied, given that the SSA limited Claimant's favorable determination on the subsequent claim to the period beginning with the day after the date of the first ALJ decision. The Emergency Message reads as follows:

> 1. Effective immediately, when a prior claim is pending at the AC [Appeals Council], we will send: subsequent disability claims to the DDS [Disability Determination Services] for development and adjudication regardless of whether they are filed under the same or a different title than the prior claims pending at the AC. * * *
>
> 2. *The DDS will limit any favorable determination on the subsequent claim to the period beginning with the day after the date of the ALJ's decision. If a subsequent claim results in a favorable determination, including a later onset or closed period of disability determination, the determination will be effectuated with an onset date no earlier than the day after the ALJ decision on the prior claim. After effectuation of the determination, the subsequent claim will be sent to the AC to determine if it contains new and material evidence relating to the period that was before the ALJ on the prior claim.*
>
> 3. If the DDS denies the subsequent claim at the initial level, the claimant may appeal the determination to the reconsideration level, and the DDS will process the claim normally.
>
> 4. *If the reconsideration determination is unfavorable, the claimant may appeal the determination to the hearing level. At that stage, the hearing office (HO) will defer action on the new request for hearing until the AC completes its action on the prior claim.*

(Emphasis added.) This policy statement respecting processing subsequent claims can be found at www.ssas.com. *See Adkins v. Barnhart*, 2003 WL 21105103 *3 (S.D.W.Va.); *Barrientoz v. Massanari*, 202 F.Supp.2d 577, 587 (W.D. Tex. 2002) ("The purpose of SSA-EM-99147 is to expedite the consideration of prior claims

## ANALYSIS

Pursuant to 28 U.S.C. § 405(g), remand is warranted "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" The Fourth Circuit has stated that "[e]vidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins v. Secretary, Dep't of Health & Human Serv., 953 F.2d 93, 96 (4th Cir. 1991)(*en banc*). The new evidence must "relate to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). This does not mean that the evidence had to have existed during that period. Rather, evidence must be considered if it has any bearing upon whether the Claimant was disabled during the relevant period of time. See Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987); Cox v. Heckler, 770 F.2d 411, 413 (4th Cir. 1985); Leviner v. Richardson, 443 F.2d 1338, 1343 (4th Cir. 1971).

The undersigned finds that the SSA decision upon Claimant's second application finding

---

once a subsequent award of benefits is granted and the claimant maintains the evidence on which it was based relates to the time period for his prior claim.") In accordance with this policy, ALJs are compelled to find upon concluding that a claimant's second application should be granted that the date of onset of the claimant's disability was the day after the first ALJ issued his or her decision. *See also* SSA POMS SI 04040.025, 2002 WL 1879213 (SSA-POMS), specifying the procedure when a subsequent claim for SSI is filed. If there is a favorable decision on a subsequent application, the decision is to be faxed immediately to the AC. It is noted that "[t]he AC will consider the evidence on the subsequent application to determine whether there is new and material evidence relating to the prior claim." It is further noted that "the AC may also conclude that the favorable determination on the subsequent application was incorrect. In such cases, the AC may exercise the Agency's authority under existing regulations to reopen the subsequent allowance. The AC may vacate the ALJ decision on the prior claim, consolidate the prior and subsequent claims, and remand both to the ALJ for further proceedings, including a new decision."

disability commencing on the day after ALJ Boyer pronounced that Claimant was not disabled is new and material evidence. The finding that Claimant was disabled the day after Judge Boyer issued his decision begs the question whether Claimant was actually disabled during the period of time relevant to ALJ Boyer's consideration of Claimant's first application. Claimant asserts that between the two decisions, Claimant did not experience any change in age, education, or prior work experience "that would naturally lead to a finding of disability under the 'grids.'" (Doc. No. 18 at 2, n.3.) As the Commissioner points out, there is no evidence that the subsequent award of benefits was based on Claimant's condition during the same relevant time period, and there is no indication on what grounds the subsequent disability award is based. Nevertheless, it is often true in cases of this nature, where benefits are awarded on a second application, that at least some of the evidence may be the same evidence considered by the ALJ. See Reichard v. Barnhart, 285 F.Supp.2d 728 (S.D.W.Va. 2003)(VanDervort, M.J.). This Court has remanded several cases with this factual scenario. See, e.g. Reichard, 285 F.Supp.2d 728; See also Bradley v. Barnhart, 463 F.Supp.2d 577, (S.D.W.Va. 2006)(Copenhaver, D.J.). The evidence may likely be a continuation of Claimant's medical evidence with regard to the same medical conditions.

     Simply in consideration of the SSA's finding that Claimant became disabled on the day after ALJ Boyer issued his decision, the undersigned finds that there is a reasonable possibility that the evidence considered by the Administration in reaching the decision on the second application might well have changed the outcome in this case as it was before ALJ Boyer. It is not in any way evident from the current record in this case how Claimant became disabled the day after ALJ Boyer's decision. Accordingly, this case must be remanded in order that the SSA decision on the second application and the documents upon which it relied can be examined to determine whether the

subsequent award of benefits was based on Claimant's condition during the same relevant time period, whether the subsequent award was based on the same evidence that was before the ALJ, and whether modification of ALJ Boyer's decision is in order in this case.

Accordingly, for the reasons set forth in this Memorandum Opinion and by Judgment Order entered this day, the Plaintiff's Motions for Remand (Doc. No. 11.) and to Submit Additional Evidence (Doc. No. 16.) are **GRANTED**, the Defendant's Motion to File Out of Time (Doc. No. 17.) is **GRANTED**, the final decision of the Commissioner is **VACATED**, and this matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for consideration of the SSA decision and evidence upon which it relied to determine whether the onset of Claimant's disability as found in subsequent proceedings to have occurred the day after the date of the ALJ's decision under review in this case actually occurred within the time frame of this case, i.e., between October 5, 2002, and May 9, 2005, and **DISMISS** this matter from the Court's docket.[5]

ENTER: February 26, 2007.

R. Clarke VanDervort
United States Magistrate Judge

---

[5] Because it has been determined that this case should be remanded, it is unnecessary to consider Defendant's Motion for Judgment on the Pleadings.