## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **CHARLES J. MARTIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:05-00947** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### AMENDED MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on Plaintiff's Motions for Remand (Doc. No. 11.) and to Submit Additional Evidence (Doc. No. 17.) and Defendant's Motions for Judgment on the Pleadings (Doc. No. 14.) and to File Out of Time his Response to Plaintiff's Motion to Submit Additional Evidence. (Doc. No. 17.) Both parties have consented in writing to a decision by the United States Magistrate Judge.

In his Motion to Submit Additional Evidence, Plaintiff points out that he was granted benefits in a subsequent application as of May 10, 2005, the day after the date of the ALJ's decision in the instant case. (Doc. No. 16.) He attaches to the Motion a copy of the Social Security Administration's ("SSA") decision, dated June 10, 2006, finding Plaintiff disabled as of May 10, 2005. Plaintiff requests that the District Court remand this case based upon this evidence. Having examined the record in this case, the Court hereby **GRANTS** Claimant's Motions for Remand and to Submit Additional Evidence, **VACATES** the decision of the Commissioner, and **REMANDS** this case to the Commissioner

pursuant to sentence six of 42 U.S.C. § 405(g) for further proceedings to determine whether the onset of Claimant's disability, as found in subsequent proceedings to have occurred the day after the date of the ALJ's decision under review in this case, actually occurred within the time frame of this case, i.e., between October 5, 2002, and May 9, 2005.[1]

The Plaintiff, Charles J. Martin (hereinafter referred to as "Claimant"), filed an application for DIB and SSI on October 30, 2003 (protective filing date), alleging disability as of October 5, 2002, due to paranoid schizophrenia and a hand impairment. (Tr. at 76-77, 78-80, 103, 261-63.) The claims were denied initially and upon reconsideration. (Tr. at 45-47, 52-54, 264-67.) On June 7, 2004, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 55.) The hearing was held on March 8, 2005, before the Honorable Charles R. Boyer. (Tr. at 25-42.) By decision dated May 9, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 16-24.) The ALJ's decision became the final decision of the Commissioner on August 12, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 5-11.) Claimant filed the present action seeking

---

[1] Sentence six of 42 U.S.C. § 405(g) provides:

The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

judicial review of the administrative decision on November 29, 2005, pursuant to 42 U.S.C. § 405(g).[2]

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the

---

[2] Proper venue under 42 U.S.C. § 405(g) is "in the district court of the United States for the judicial district in which the [claimant] resides." 42 U.S.C. § 405(g). Pursuant to Rule 12(h)(1) of the Federal Rules of Civil Procedure, the defense of improper venue is waived where not raised. *See also*, *Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S.Ct. 1084, 1089, 4 L.Ed.2d 1254 (1960)("finding that a "defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default."). Absent extraordinary circumstances, improper venue should not be raised *sua sponte* after the Defendant has effectively waived the issue. *See Stjernholm v. Peterson*, 83 F.3d 347, 349 (10th Cir.), *cert. denied*, 519 U.S. 930, 117 S.Ct. 301, 136 L.Ed.2d 219 (1996); *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371 (2d Cir. 1966)("Since the right to attack venue is personal to the parties and waivable at will, a district judge should not, in the absence of extraordinary circumstances, impose his choice of forum upon the parties by deciding on his own motion that there was a lack of proper venue."). Defendant has not raised the defense of improper venue, and therefore, the Court finds that the defense has been effectively waived. Accordingly, the Court considers the merits of Claimant's appeal.

claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently,

4

appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

5

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 18.) Under the second inquiry, the ALJ found that Claimant suffered from "a depressive disorder, borderline intellectual functioning, obstructive emphysema and bronchitis, and a chronic deformity of three fingers of the left hand," which the ALJ regarded as severe impairments. (Id.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 21.) The ALJ then found that Claimant had a residual functional capacity for "simple, repetitive work at the medium exertional level that involved little stress and required minimal public contact." (Tr. at 22.) At step four, the ALJ found that Claimant was able to return to his past

relevant work as a security guard patrolling property, as that occupation was performed by him. (Tr. at 23.) On this basis, benefits were denied. (Tr. at 23-24.)

<u>Claimant's Background</u>

Claimant was born on October 29, 1952, and was 52 years old at the time of the administrative hearing. (Tr. at 17, 33-34, 78.) Claimant had a third grade education and received vocational training. (Tr. at 17, 32-33, 109.) In the past, Claimant worked as a window replacement helper, a lawn care worker, a security officer, an irrigation service technician, a service station tow truck driver, a night manager for an arcade, and a grounds crewman for a golf course. (Tr. at 17, 34, 123-30.)

<u>Motion for Remand</u>

Claimant filed his Motion for Remand on March 1, 2006 (Doc. No. 11.), and his Motion to Submit Additional Evidence on June 21, 2006. (Doc. No. 16.) Attached to his Motion to Submit Additional Evidence was a copy of the SSA's decision finding him disabled as of May 10, 2005. (Doc. No. 16, Exhibit A.) It is on this latter additional evidence that the Court finds Claimant's Motion for Remand meritorious. Remand is appropriate for the Commissioner to consider the evidence underlying the SSA's decision finding Claimant disabled as of May 10, 2005, the day after the unfavorable ALJ decision at issue in the instant case. Apparently, after receiving the Appeals Council's August 12, 2005, decision denying review of the May 9, 2005, denial of benefits, Claimant applied a second time for DIB benefits. The Court is unaware of whether Claimant's alleged onset date in this second application was October 5, 2002, the same date which was alleged in his first application.

In a decision dated June 10, 2006, the SSA found Claimant disabled as of May 10, 2005, the day after the date of ALJ Boyer's decision in the instant case finding Claimant not disabled. (Doc. No. 16, Exhibit A.) The SSA's decision gives no indication of the reasoning behind the decision. Clearly, however, as the Appeals Council's denial of request for review of the instant claim was dated August

7

12, 2005, the Appeals Council did not have the June 10, 2006, decision when it accepted ALJ Boyer's

May 9, 2005, decision.[4]

_____

[4] The Court presumes that Claimant's second application for benefits was filed after the Appeals Council denied his request for review.  *See* 20 C.F.R. § 404.900(a)(5) (2002). That being the case, the Social Security Administration's December 30, 1999, Emergency Message-99147, which the Court has cited in ruling on cases similar to this one, did not specifically apply in the instant case. Its effect, however, seems to have applied, given that the SSA limited Claimant's favorable determination on the subsequent claim to the period beginning with the day after the date of the first ALJ decision. The Emergency Message reads as follows:

1. Effective immediately, when a prior claim is pending at the AC [Appeals Council], we will send: subsequent disability claims to the DDS [Disability Determination Services] for development and adjudication regardless of whether they are filed under the same or a different title than the prior claims pending at the AC. * * *

2. *The DDS will limit any favorable determination on the subsequent claim to the period beginning with the day after the date of the ALJ's decision. If a subsequent claim results in a favorable determination, including a later onset or closed period of disability determination, the determination will be effectuated with an onset date no earlier than the day after the ALJ decision on the prior claim. After effectuation of the determination, the subsequent claim will be sent to the AC to determine if it contains new and material evidence relating to the period that was before the ALJ on the prior claim.*

3. If the DDS denies the subsequent claim at the initial level, the claimant may appeal the determination to the reconsideration level, and the DDS will process the claim normally.

4. *If the reconsideration determination is unfavorable, the claimant may appeal the determination to the hearing level. At that stage, the hearing office (HO) will defer action on the new request for hearing until the AC completes its action on the prior claim.*

(Emphasis added.) This policy statement respecting processing subsequent claims can be found at www.ssas.com. *See Adkins v. Barnhart*, 2003 WL 21105103 *3 (S.D.W.Va.); *Barrientoz v. Massanari*, 202 F.Supp.2d 577, 587 (W.D. Tex. 2002) ("The purpose of SSA-EM-99147 is to expedite the consideration of prior claims once a subsequent award of benefits is granted and the claimant maintains the evidence on which it was based relates to the time period for his prior claim.") In accordance with this policy, ALJs are compelled to find upon concluding that a claimant's second application should be granted that the date of onset of the

Although not cited in this Claimant's Motion for Remand, other Claimants have pointed out that the Court has remanded cases in the past under similar circumstances, citing as a basis the Fourth Circuit's decision in <u>Lively v. Secretary of Health & Human Serv.</u>, 820 F.2d 1391 (4th Cir. 1987). On October 19, 1981, an Administrative Law Judge denied Mr. Lively's first application for disability benefits because he was found to be capable of light work and he had not reached the age of 55 and therefore did not qualify as a person of "advanced age" under the applicable Grids. Mr. Lively turned 55 years old on November 3, 1981, several weeks after the ALJ's decision. He appealed the ALJ's decision denying his application unsuccessfully through the District Court level. On December 14, 1983, about two years and two months after the ALJ issued the decision denying Mr. Lively's first application for disability benefits, Mr. Lively made a second application. Once again, an ALJ found Mr. Lively not disabled. The ALJ did not discuss the first decision that Mr. Lively could do light work but found that he "retained the functional capacity for the performance of work activity at any exertional level on and prior to December 31, 1981." <u>Lively</u>, 820 F.2d at 1392.[5] Mr. Lively appealed this decision without success through the District Court level, but the Fourth Circuit Court of Appeals

claimant's disability was the day after the first ALJ issued his or her decision. *See also* SSA POMS SI 04040.025, 2002 WL 1879213 (SSA-POMS), specifying the procedure when a subsequent claim for SSI is filed. If there is a favorable decision on a subsequent application, the decision is to be faxed immediately to the AC. It is noted that "[t]he AC will consider the evidence on the subsequent application to determine whether there is new and material evidence relating to the prior claim." It is further noted that "the AC may also conclude that the favorable determination on the subsequent application was incorrect. In such cases, the AC may exercise the Agency's authority under existing regulations to reopen the subsequent allowance. The AC may vacate the ALJ decision on the prior claim, consolidate the prior and subsequent claims, and remand both to the ALJ for further proceedings, including a new decision."

[5] The ALJ apparently concluded, without regard for the ALJ's prior finding that Mr. Lively was capable of light work, that he was capable of medium work and hence not disabled. *See* 20 C.F.R. Part 404, Subpart P, App. 2, Table No. 2 and Table No. 3.

reversed and remanded for entry of judgment in favor of Mr. Lively. The Court stated as follows:

> Congress has clearly provided by statute that res judicata prevents reappraisal of both
> the Secretary's findings and his decision in Social Security cases that have become
> final, 42 U.S.C. § 405(h), and the Courts have readily applied res judicata to prevent
> the Secretary from reaching an inconsistent result in a second proceeding based on
> evidence that has already been weighted in a claimant's favor in an earlier proceeding.
> Gavin v. Heckler, 811 F.2d 1195, 1200 (8th Cir. 1987). In the present case, it is true
> that the prior administrative proceeding did not result in a decision favorable to the
> appellant. Thus, Gavin is not strictly controlling. The statute upon which Gavin rests,
> though, 42 U.S.C. § 405(h), gives finality to findings, as well as decisions, made in
> previous proceedings between the parties.

Id. (Emphasis in decision.) The Court concluded as follows:

> The first ALJ found in 1981, that plaintiff was limited to light work, and the Secretary
> successfully defended that finding on judicial review. Some two weeks after appellant
> was found limited to light work, he became 55 years of age. It is utterly inconceivable
> that his condition had so improved in two weeks as to enable him to perform medium
> work. Principles of finality and fundamental fairness, drawn from 405(h) as discussed
> above, indicate that the Secretary must shoulder the burden of demonstrating that the
> claimant's condition improved sufficiently to indicate that the claimant was capable
> of performing medium work. Cf. Dotson v. Schweiker, 719 F.2d 80 (4th Cir. 1983).
> Certainly, there was no evidence of any such miraculous improvement, and, as Gavin
> makes clear, 811 F.2d at 1200, such evidence, not considered in the earlier proceeding,
> would be needed to sustain a finding contrary to the final earlier finding.

Id. The Court concluded that "[b]ecause the appellant was limited to light work when he attained 55

years of age, he was entitled to benefits on his second application therefor." Id.

In Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473 (4th Cir. 1999)(King, Circuit

Judge), the Fourth Circuit distinguished Lively. Mr. Albright filed applications for DIB and SSI on

April 17, 1991, claiming onset of disability on March 31, 1990. Id. at 474. By Decision dated May 28,

1992, an ALJ concluded that Mr. Albright was not entitled to benefits because he was able "to perform

a full range of work at all exertional levels without any identifiable functional limitations of any

sort[.]" Id., at 474 n. 1. Mr. Albright did not  appeal. Rather, he filed again for DIB and SSI in

November and December, 1992.[6] On October 26, 1994, an ALJ again denied Mr. Albright's applications without evaluating his physical condition on the basis of Social Security Acquiescence Ruling 94-2(4) modeled after the Fourth Circuit's decision in <u>Lively</u>.[7] The Ruling required that an ALJ

---

[6] In his second applications, Mr. Albright sought benefits, as he had in his first applications, for the period from March 31, 1990, through May 28, 1992, the date of the ALJ's Decision denying his first applications. In considering Mr. Albright's second applications, the ALJ dismissed his claims for this period, and the Fourth Circuit regarded the dismissal entirely proper. *Albright*, 174 F.3d at 476 n. 4. The decision upon his first applications had become final.

[7] After the Fourth Circuit's decision in *Albright*, the Social Security Administration issued Acquiescence Ruling 00-1(4). In view of *Albright*, the Social Security Administration resolved as follows:

> When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

> Where the prior finding was about a fact which is subject to change with the passage of time, such as a claimant's residual functional capacity, or that a claimant does or does not have an impairment(s) which is severe, the likelihood that such fact has changed generally increases as the interval of time between the previously adjudicated period and the period being adjudicated increases. An adjudicator should give greater weight to such a prior finding when the previously adjudicated period is close in time to the period being adjudicated in the subsequent claim, e.g., a few weeks as in Lively. An adjudicator generally should give less weight to such a prior finding as the proximity of the period previously adjudicated to the period being adjudicated in the subsequent claim becomes more remote, e.g., where the relevant time period exceeds three years as in Albright. In determining the weight to be given such a prior finding, an adjudicator must consider all relevant facts and circumstances on a case-by-case basis.

adopt the findings of an ALJ in consideration of a prior application which was finally adjudicated "in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding." Id., at 474 -75. In consideration of Mr. Albright's further applications, the ALJ concluded that the Ruling required the denial of benefits because there was no new and material evidence regarding the severity of the alleged impairment. Id., at 475. Mr. Albright appealed, and the District Court granted his Motion for Summary Judgment and remanded his claim for *de novo* consideration finding that Social Security Acquiescence Ruling 94-2(4) interpreted Lively too broadly. Id. The Fourth Circuit affirmed stating as follows:

> Rather than signaling a sea change in the law of preclusion, the result in Lively is instead best understood as a practical illustration of the substantial evidence rule. In other words, we determined that the finding of a qualified and disinterested tribunal that Lively was capable of performing only light work as of a certain date was such an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence. To have held otherwise would have thwarted the legitimate expectations of claimants – and, indeed, society at large – that final agency adjudications should carry considerable weight. Even more importantly, judicial ratification of the SSA's "bait-and -switch" approach to resolving Lively's claim would have produced a result reasonably perceived as unjust and fundamentally unfair.

Id., at 477-78 (Footnotes omitted.). See also Drummond v. Commissioner of Soc. Sec., 126 F. 3d 837, 841-42 (6th Cir. 1997), discussing and relying upon Lively to conclude that "[j]ust as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner."

## ANALYSIS

Pursuant to 28 U.S.C. § 405(g), remand is warranted "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" The Fourth Circuit has stated that "[e]vidence is material if there is a reasonable possibility that  the new evidence would have changed the outcome." Wilkins v.

Secretary, Dep't of Health & Human Serv., 953 F.2d 93, 96 (4th Cir. 1991)(*en banc*). The new evidence must "relate to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). This does not mean that the evidence had to have existed during that period. Rather, evidence must be considered if it has any bearing upon whether the Claimant was disabled during the relevant period of time. See Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987); Cox v. Heckler, 770 F.2d 411, 413 (4th Cir. 1985); Leviner v. Richardson, 443 F.2d 1338, 1343 (4th Cir. 1971).

The undersigned finds that the SSA decision finding disability commencing on the day after ALJ Boyer pronounced that Claimant was not disabled is new and material evidence. The Administration reached its decision in the adjudication of Claimant's second application. The finding that Claimant was disabled the day after Judge Boyer issued his decision begs the question whether Claimant was actually disabled during the period of time relevant to ALJ Boyer's consideration of Claimant's first application. Claimant asserts that between the two decisions, Claimant did not experience any change in age, education, or prior work experience "that would naturally lead to a finding of disability under the 'grids.'" (Doc. No. 18 at 2, n.3.) As the Commissioner points out, there is no evidence that the subsequent award of benefits was based on Claimant's condition during the same relevant time period, and there is no indication on what grounds the subsequent disability award is based. Nevertheless, it is often true in cases of this nature, where benefits are awarded on a second application, that at least some of the evidence may be the same evidence considered by the ALJ. See Bradley v. Barnhart, 463 F.Supp.2d 577 (S.D. W.Va. 2006)(Copenhaver, D.J.); Reichard v. Barnhart, 285 F.Supp.2d 728 (S.D. W. Va. 2003) (VanDervort, M.J.). This Court has remanded several cases with this factual scenario. See, e.g. Reichard, 285 F.Supp.2d 728. The evidence may likely be a continuation of Claimant's medical evidence with regard to the same medical conditions.

Simply in consideration of the SSA's finding that Claimant became disabled on the day after ALJ Boyer issued his decision, the undersigned finds that there is a reasonable possibility that the evidence considered by the Administration in reaching the decision on the second application might well have changed the outcome in this case as it was before ALJ Boyer. It is not in any way evident from the current record in this case how Claimant became disabled the day after ALJ Boyer's decision. Accordingly, this case must be remanded in order that the SSA decision on the second application and the documents upon which it relied can be examined to determine whether the subsequent award of benefits was based on Claimant's condition during the same relevant time period, whether the subsequent award was based on the same evidence that was before the ALJ, and whether modification of ALJ Boyer's decision is in order in this case.

In consideration of the authorities addressed by the Court and cited by parties in other such cases for and against remand, the undersigned finds that this case is clearly factually and procedurally quite different from Lively and Albright. In this case, the ALJ's decision was favorable upon Claimant's second DIB application, not the first as in Lively. The SSA decision upon the Claimant's second application is final in this case whereas in Lively the later decision was not. ALJ Boyer's decision upon Claimant's first application is obviously still subject to review and therefore not final. This case is therefore the photographic negative of Lively. Thus, the undersigned finds that Lively and Albright are plainly distinguishable.

This notwithstanding, the undersigned finds the logic of Lively as it was explained by the Court in Albright generally compelling. Final decisions of Administrative Law Judges based upon substantial evidence must receive full consideration and be assigned weight as may be appropriate in view of the circumstances under which they are issued. Thus, *res judicata* applies to findings and decisions on the merits which become final as a consequence of a claimant's exhaustion of or failure

to pursue administrative or judicial review after notice of an adverse decision. <u>Grose v. Cohen</u>, 406

F.2d 823, 824 (4th Cir. 1969)(Referring to the Social Security Act and Regulations, the Court stated

that "[o]rdinarily an administrative decision becomes final unless a civil action is filed in district court

within 60 days.")[8] In <u>Lively</u>, for example, the finding in the first and final decision of the ALJ that Mr.

Lively was capable of sedentary work took precedence. In this case, ALJ Boyer's unfavorable decision

upon Claimant's first application cannot because it is still under review. The favorable decision of the

---

[8] The Court in *Grose v. Cohen*, 406 F.2d at 825, found in view of Social Security Regulations pertaining to reopening final decisions, now 20 C.F.R. §§ 404.987 - 404.989, that "[t]he regulations recognize that it is undesirable to attribute finality to every administrative decision." The Fourth Circuit stated further as follows:

> While the regulation is couched in terms of reopening a decision otherwise final, it also serves to identify decisions that should not be interposed to deny subsequent applications. A decision that is subject to being reopened provides an inappropriate bar. The dictates of equity and fundamental fairness that allow a decision containing error on the face of the evidence to be reopened preclude use of the same decision as a foundation for res judicata.

*Id.* (Footnote omitted.); *See also Leviner v. Richardson*, 443 F.2d at 1343 ("A prior administrative determination should not . . . be res judicata where new and material evidence is offered which is of sufficient weight that it may result in a different determination.") The current Regulations are quite similar to those considered by the Court in *Grose*. 20 C.F.R. § 404.988(a) and (b) provide as follows:

> A determination, revised determination, decision, or revised decision may be reopened –
> (a) Within 12 months of the date of the notice of the initial determination, for any reason;
> (b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in §404.989, to reopen the case[.]

20 C.F.R. § 404.989(a)(3) provides that "[w]e will find that there is good cause to reopen a determination or decision if – * * * (3) The evidence that was considered in making the determination clearly shows on its face that an error was made." It is also noteworthy that these days many cases remain before the Appeals Council for more than twelve months. Nothing prohibits claimants from attempting to reopen decisions while they are pending in the Appeals Council. Further, nothing prohibits claimants from filing subsequent applications while adverse rulings are pending review in the Appeals Council.

Administration upon Claimant's second applications does have precedential value, however, but only by its terms beginning May 10, 2005, the day after ALJ Boyer issued his decision upon Claimant's first application.

Thus, the SSA's later decision that Claimant was disabled beginning the very next day on May 10, 2005, is a final decision with respect to a finding of disability. There is and can be no question therefore that Claimant was disabled on May 10, 2005, and the question whether Claimant was disabled on May 9, 2005, remains open. The SSA's final decision including the evidence considered is cognizable as evidence related and material to the question whether Claimant was disabled at any time during the period covered by ALJ Boyer's decision.[9] The new evidence relates to the prior time period because of its continuity and its possible bearing upon whether Claimant was disabled on or before May 10, 2005.

Accordingly, for the reasons set forth in this Memorandum Opinion and by Judgment Order entered this day, the Plaintiff's Motions for Remand (Doc. No. 11.) and to Submit Additional Evidence (Doc. No. 16.) are **GRANTED**, the Defendant's Motion to File Out of Time (Doc. No. 17.) is **GRANTED**, the final decision of the Commissioner is **VACATED**, and this matter is **REMANDED**

---

[9] The undersigned recognizes that by virtue of occurrences such as accidents or the onset of further severe medical and/or psychological conditions after ALJ decisions upon claimants' first applications, subsequent applications will quite naturally result in disability onset dates sometime thereafter as well. When, on the other hand, disability is found upon subsequent applications on substantially the same evidentiary background as was considered with respect to prior applications without such occurrences, the disability onset date might reasonably be sometime prior to the ALJ's decision respecting the prior applications in view of a subsequent finding of disability. *See Howard v. Apfel*, 17 F.Supp.2d 955, 971-72 (W.D. Mo. 1998)("[B]ecause ALJ . . . found plaintiff disabled as of the day after the denial on reconsideration of her first application . . . and the evidence in the record establishes that plaintiff's condition was substantially the same in 1991 as it was in 1993, remand is not warranted and plaintiff is entitled to an award of benefits covering the period [from the date of onset of disability as stated by plaintiff in her initial application through the date of denial of her first application on reconsideration]."

to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of the SSA

decision and evidence upon which it relied to determine whether the onset of Claimant's disability as

found in subsequent proceedings to have occurred the day after the date of the ALJ's decision under

review in this case actually occurred within the time frame of this case, i.e., between October 5, 2002,

and May 9, 2005, and **DISMISS** this matter from the Court's docket.[10]

      ENTER: April 28, 2008.

R. Clarke VanDervort
United States Magistrate Judge

---

[10] Because it has been determined that this case should be remanded, it is unnecessary to consider Defendant's Motion for Judgment on the Pleadings.

17